UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Facsimile: (973) 645-5993
Email: Lauren.Bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ : | Case Number 20-15628 (JNP) | |
| In re : | Chapter 7 | |
| : | | |
| Louie Joseph Aquilino and : | | |
| Robin Aquilino, : | | |
| : | | |
| Debtors. : | | |
| _____ : | | |
| In re: : | Adv. Pro. Number 22-1365 (JNP) | |
| : | | |
| Andrew R. Vara, : | The Honorable Jerrold N. Poslusny, Jr. | |
| United States Trustee, : | | |
| : | Hearing Date: September 10, 2024, at 2:00 p.m. | |
| Plaintiff, : | | |
| v. : | | |
| : | | |
| Louie Joseph Aquilino and : | | |
| Robin Aquilino, : | | |
| : | | |
| Defendants. : | | |
| _____ : | | |

**CERTIFICATION OF ADAM SHAARAWY IN SUPPORT OF MOTION OF THE
UNITED STATES TRUSTEE FOR SUMMARY JUDGMENT ON THE FIRST,
SECOND, THIRD, AND FOURTH CAUSES OF ACTION OF THE COMPLAINT
UNDER 11 U.S.C. § 727(a)(2)(A), (3), AND (4)**

I, Adam Shaarawy, of full age hereby certify as follows:

1.      I am employed as a Bankruptcy Analyst for the Office of the United States Trustee

for Region 3 in Newark, New Jersey.   My duties include the review of chapter 7 petitions,

schedules, statements of financial affairs, and other documents to determine whether a complaint objecting to discharge is warranted.

2.      My knowledge of the matters addressed in this certification is derived from: (i) my review of the docket and documents filed in this case, (ii) my review of documents produced by the Defendants, (iii) my review of documents produced by third parties, and (iv) my review of transcripts of the Meeting of Creditors, the Defendants' Rule 2004 examinations, and other deposition testimony.

## IDENTIFICATION

3.      Attached as **Exhibit A** is a true and accurate copy of the transcript of the Section 341(a) Meeting of Creditors, conducted by the Andrew Finberg, Esq., as chapter 7 trustee ("Case Trustee"), on May 22, 2020.

4.      Attached as **Exhibit B** is a true and accurate copy of the transcript of the examination pursuant to Bankruptcy Rule 2004 conducted by the Case Trustee ("Case Trustee's 2004 Exam") on March 8, 2021.

5.      Attached as **Exhibit C** is a true and accurate copy of the Subpoena to Produce Documents, Information, or Objections or to Permit Inspection of Premises in a Bankruptcy Case ("Subpoena for Documents") issued by the United States Trustee for Regions 3 and 9 ("U.S. Trustee" or "Plaintiff") to the Defendants.

6.      Attached as **Exhibit D** is a true and accurate copy of the transcript of the examination pursuant to Bankruptcy Rule 2004 conducted by counsel for the U.S. Trustee ("U.S. Trustee's 2004 Exam") on November 17, 2021.

7.      Attached as **Exhibit E** is a true and accurate copy of a Settlement Agreement entered into by Defendant Louie Aquilino and Sons of Steel LLC with the Iron Workers District

Counsel Philadelphia and Vicinity Benefit and Pension Funds on June 12, 2018 ("June 2018 Settlement Agreement").

8.      Attached as **Exhibit F** is a true and accurate copy of the Complaint filed to initiate a civil action in the District Court for the Eastern District of Pennsylvania, captioned Trustees and Fiduciaries of the Iron Workers District Counsel (Philadelphia and Vicinity), Benefits Pension Plans, et al. v. Sons of Steel, LLC, et al (No. 18-cv-3074), with exhibits to the Complaint omitted, but available upon request.

9.      Attached as **Exhibit G** is a true and accurate copy of the Amended Complaint filed in the Union Action, with exhibits to the Amended Complaint omitted, but available upon request.

10.     Attached as **Exhibit H** is a true and accurate copy of the Answer filed by the Defendants in the Union Action.

11.     Attached as **Exhibit I** is a true and accurate copy of a Status Report in the Union Action.

12.     Attached as **Exhibit J** is a true and accurate copy of the transcript from the Section 341(a) Meeting of Creditors held in the Sons of Steel bankruptcy case, Case No. 20-12978 on April 17, 2020.

13.     Attached as **Exhibit K** is a true and accurate copy of the signature page from Claim Form submitted by Defendant Louie Aquilino to the Archdiocese of Philadelphia Independent Reconciliation and Reparations Fund ("IRRP"), dated December 17, 2018.

14.     Attached as **Exhibit L** is a true and accurate copy of a disbursement memo concerning Defendant Louie Aquilino's receipt of $210,000 from the IRRP.

15.     Attached as **Exhibit M** is a true and accurate copy of the March 4, 2019 wire transfer report for deposit of $210,000 into the account at Columbia Bank ending in 5906, the L&B

Account (defined below).

16.     Attached as **Exhibit N** is a true and accurate copy of the Columbia Bank Account Information Sheets for the L&B Account.

17.     Attached as **Exhibit O** is a true and accurate copy of the bank account statements for the L&B Account from March 2019 through April 2020.

18.     Attached as **Exhibit P** is a true and accurate copy of the bank account statements for Stars and Stripes from March 2019 through December 2019.

19.     Attached as **Exhibit Q** is a true and accurate copy of the bank account statements for the account at Columbia Bank ending in 1152, the Defendants' Joint Account (defined below) for March 2019 through April 2019.

20.     Attached as **Exhibit R** is a true and accurate copy of the Columbia Bank Account Information Sheets for the account ending in 0125, the L&G Account (defined below).

21.     Attached as **Exhibit S** is a true and accurate copy of the bank account statements for the L&G Account from March 2019 through April 2020.

22.     Attached as **Exhibit T** is a true and accurate copy of the Columbia Bank Account Information Sheet for the account ending in 0052, the L&C Account (defined below).

23.     Attached as **Exhibit U** is a true and accurate copy of a letter from the Defendants to the Case Trustee dated June 12, 2020.

24.     Attached as **Exhibit V** is a true and accurate copy of a July 16, 2020 email from the Defendants' prior bankruptcy counsel, Spector Gadon Rosen Vinci, P.C. ("Spector Gadon") to the Defendants.

25.     Attached as **Exhibit W** is a true and accurate copy of a March 31 2020 email string between Spector Gadon and the Defendants.

26.     Attached as **Exhibit X** is a true and accurate copy of statements from Defendant Louie Aquilino's Bank of America CashPay Government Card.

27.     Attached as **Exhibit Y** is a true and accurate copy of Giavanna Aquilino's 2019 Federal Income Tax Return.

28.     Attached as **Exhibit Z** is a true and accurate copy of Giavanna Aquilino's 2020 Federal Income Tax Return.

29.     Attached as **Exhibit AA** is a true and accurate copy of Brooke-Linh Aquilino's 2020 Federal Income Tax Return.

30.     Attached as **Exhibit BB** is a true and accurate copy of the Janney Investment Account Statements.

31.     Attached as **Exhibit CC** is a true and accurate copy of the Balance Sheet for Salon Giavanna Marie, dated as of December 31, 2019.

32.     Attached as **Exhibit DD** is a true and accurate copy of the Account QuickReport for Salon Giavanna Marie.

33.     Attached as **Exhibit EE** is a true and accurate copy of the Balance Sheet for Stars and Stripes, dated as of December 31, 2019.

34.     Attached as **Exhibit FF** is a true and accurate copy of the bank account statements for Stars and Stripes from March 2019 through December 2019.

35.     Attached as **Exhibit GG** is a true and accurate copy of the Amended General Order Regarding Operations Under the Exigent Circumstances Created by Coronavirus (COVID-19) entered on April 6, 2020.

36.     Attached as **Exhibit HH** is a true and accurate copy of an email string from March 31, 2020 to April 1, 2020, between the Defendants and Spector Gadon.

37.     Attached as **Exhibit II** is a true and accurate copy of an email string from April 7, 2020, between the Defendants and Spector Gadon.

38.     Attached as **Exhibit JJ** is a true and accurate copy of an email string from April 8, 2020 to April 9, 2020, between the Defendants and Spector Gadon.

39.     Attached as **Exhibit KK** is a true and accurate copy of an email from April 15, 2020 from Spector Gadon to the Defendants.

40.     Attached as **Exhibit LL** is a true and accurate copy of and April 15, 2020 from Spector Gadon to the Defendants, attaching documents.

41.     Attached as **Exhibit MM** is a true and accurate copy of an April 16, 2020 email from the Defendants to Spector Gadon.

42.     Attached as **Exhibit NN** is a true and accurate copy of an email string on April 16, 2020 between Spector Gadon and the Defendants.

43.     Attached as **Exhibit OO** is a true and accurate copy of an email string from July 17, 2020 to July 29, 2020 between Spector Gadon and the Defendants.

44.     Attached as **Exhibit PP** is a true and accurate copy of the Defendants' Individual Tax Returns for 2018 and 2019 and the Defendants' Business Tax Returns for Salon Giavanna Marie for 2018 and 2019.

45.     Attached as **Exhibit QQ** is a true and accurate copy of the Defendants' Business Tax Returns for Stars and Stripes for 2018 and 2019.

46.     Attached as **Exhibit RR** is a true and accurate copy of the transcript of the Deposition of Leslie Beth Basking, Esq., of Spector Gadon.

## BACKGROUND

### I.    General Background

47.    On April 16, 2020 ("Petition Date"), Louie Joseph Aquilino and Robin Aquilino ("Defendants") filed a *Voluntary Petition* ("Petition") for relief under chapter 7 of title 11 of the United States Code ("Bankruptcy Code").    *See* Docket No 1.[1]

48.    The Defendants had a previous bankruptcy filing, Case No. 05-38305 (GMB) ("Prior Case"), in which they received a discharge under chapter 7 of the Bankruptcy Code.    *See* Case No. 05-38305 (GMB), Docket Nos. 1 and 98.

49.    On April 17, 2020, Andrew Finberg, Esq., was appointed the chapter 7 trustee ("Case Trustee"). *See* Docket No. 2. On April 29, 2024, Andrew Sklar, Esq., was appointed as Successor Trustee.    *See* Docket No. 375.

50.    Defendants are married and have four living children: (i) Giavanna Marie Aquilino ("Giavanna"), who, upon information and belief, was 24 years old on the Petition Date; (ii) Brooke-Linh Aquilino ("Brooke-Linh") who was 23 years old as of the Petition Date; (iii) Robert Aquilino ("Robert") who, upon information and belief, was 23 years old as of the Petition Date; and (iv) Chrystian Aquilino ("Chrystian") who was 17 years old as of the Petition Date.    *See* Defendants' Prior Case, Docket No. 1, Schedule I, listing dependents by relationship and age.

51.    On the Petition Date, the Defendants filed their Petition, Schedules, Statement of Financial Affairs ("SoFA") and Chapter 7 Statement of Current Monthly Income.    *See* Docket No. 1.

---

[1] The Plaintiff requests that the Court take judicial notice of its own files in this case pursuant to Fed. R. E. 201 which is applicable in bankruptcy cases through Fed. R. Bankr .P. 9017, including the following documents: Defendants' Petition, Schedules, Statement of Financial Affairs, Official Form 22A-1, and any amendments thereto, the Complaint and Answer.

52.     Defendants disclosed three businesses on Schedule A/B: (i) Sons of Steel, LLC ("Sons of Steel") a union iron workers business, wholly owned by Defendant Robin Aquilino but operated by Defendant Louie Aquilino when it was still operational; (ii) Stars and Stripes Enterprises LLC ("Stars and Stripes"), a construction business, wholly owned by Defendant Louie Aquilino; and (iii) Salon Giavanna Marie ("Salon"), a hair salon, wholly owned by Defendant Robin Aquilino.   *See* Docket No. 1, Schedule A/B, ¶ 19 and SOFA, ¶ 27.   The Defendants valued each business at $0.00.   *See* Docket No. 1, Schedule A/B, ¶ 19.

53.     On Schedule A/B, as originally filed, the Defendants disclosed their interest in one bank account, a joint checking account at Columbia Bank with $200.   *See* Docket No. 1, page 15, ¶ 17.   The Defendants' joint account ends in 1152 ("Defendants' Joint Account").   *See* Docket No. 64, page 15, ¶ 17.

54.     On Schedule A/B, as in response to the directive to list "[o]ther amounts someone owes you[,]" the Defendants answered "No."   *See* Docket No. 1 at page 17, ¶ 30.

55.     On Schedule A/B, in response to the directive to list "[a]ny financial assets you did not already list[,]" the Defendants answered "No."   *See* Docket No. 1 at page 17, ¶ 35.

56.     The Defendants' SoFA, as originally filed, shows $151,652.00 total income in 2018, $16,847.85 total income in 2019, and no income in 2020.   *See* Docket No. 1 at page 43, ¶¶ 4 and 5.

57.     The Defendants' SoFA disclosed that during the two years preceding the filing of their petition, they had not transferred any property outside the ordinary course of their business or financial affairs.   *See* Docket No. 1 at page 46, ¶ 18.

58.     On May 22, 2020, the Case Trustee conducted the Section 341(a) Meeting of Creditors ("341(a) Meeting").   *See* Exhibit A.

8

59. On July 22, 2020, the Defendants filed an Amended Schedule A/B disclosing their interest in two additional bank accounts: (i) Columbia Bank Account ending in 0125, jointly owned by Defendant Louie Aquilino and his daughter, Giavanna (the "L&G Account"); and (ii) Columbia Bank Account ending in 0052, jointly owned by the Defendant Louie Aquilino and his son, Chrystian Aquilino (the "L&C Account"). *See* Docket No. 64 at page 10, ¶ 17.

60. Amended Schedule A/B does not include the Columbia Bank Account ending in 5906, jointly owned by Defendant Louie Aquilino and his daughter, Brooke-Linh (the "L&B Account"). *See id*.

61. On July 29, 2020, the Defendants filed an Amended SoFA, which discloses $208,652 total income in 2018, $16,847.84 total income in 2019, and $0 total income January 1, 2020 to the Petition Date. *See* Docket No. 71 at pages 2-3, ¶¶ 4 and 5.

62. On March 8, 2021, the Case Trustee conducted a Rule 2004 Examination of the Defendants ("Case Trustee's 2004 Exam"). *See* Exhibit B.

63. On November 17, 2021, the U.S. Trustee conducted a Rule 2004 Examination of the Defendants ("U.S. Trustee's 2004 Exam"). *See* Exhibit D.

**II. Banking Records**

64. The banking records for the L&B Account show a deposit of $210,000 on March 4, 2019. *See* Exhibit O.

65. Prior to the deposit of the funds from the $210,000 Settlement in March 2019, bank statements for the L&B Account show that from July 2018 to February 2019 the account balance never exceeded $2,169.25. *See id.*

66. Bank statements for the L&B Account show transfers from the L&B Account to other accounts owned or controlled by Defendant Louie Aquilino with the notation that the

transfers were loans from Brooke-Linh to Defendant Louie Aquilino and Stars and Stripes.    *See*

*id.*    More specifically, the transfers out the L&B Account to Defendant Louie Aquilino and Stars

& Stripes in a two-month period total $216,000 and include:

    a.  Check No. 90, dated March 5, 2019, in the amount of $50,000 from Brooke-Linh to Defendant Louie Aquilino with the notation "Loan";

    b.  Check No. 91, dated March 5, 2019, in the amount of $80,000 from Brooke-Linh to Stars and Stripes with the notation "Loan";

    c.  Check No. 96, dated April 10, 2019, in the amount of $30,000 from Brooke-Linh to Stars and Stripes with the notation "Loan";

    d.  Check No. 89, dated April 17, 2019, in the amount of $30,000 from Brooke-Linh to Stars and Stripes with the notation "Loan";

    e.  Check No. 93, dated May 1, 2019, in the amount of $26,000 from Brooke-Linh to Stars and Stripes with the notation "Loan".

*See id.*

67.    Beginning at the end of May 2019 and through December 2019, Defendant Louie

Aquilino wrote checks from Stars and Stripes to Brooke-Linh for "loan repayments" totaling

$55,260:

    a.  Check No. 1067, dated May 31, 2019, in the amount of $20,000 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

    b.  Check No. 1092, dated June 17, 2019, in the amount of $2,000 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

    c.  Check No. 1134, dated August 1, 2019, in the amount of $1,500 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

    d.  Check No. 2016, dated August 15, 2019, in the amount of $3,200 from Stars and Stripes to Cash with the notation "Loan Repayment – Brooke Aquilino";

    e.  Check No. 2117, dated August 8, 2019, in the amount of $1,600 from Stars and Stripes to Cash with the notation "Loan Repayment – Brooke Aquilino";

f.  Check No. 1153, dated September 4, 2019, in the amount of $3,000 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

g.  Check No. 1803, dated September 12, 2019, in the amount of $2,500 from Stars and Stripes to Cash with the notation "Loan Repayment – Brooke Aquilino";

h.  Check No. 1167, dated September 17, 2019, in the amount of $1,300 from Stars and Stripes to Cash with the notation "Brooke Linh Reimbursement";

i.  Check No. 1814, dated September 20, 2019, in the amount of $600 from Stars and Stripes to Cash with the notation "Loan Repayment – Brooke Aquilino";

j.  Check No. 1168, dated September 25, 2019, in the amount of $4,300 from Stars and Stripes to Cash with the notation "Loan Reimbursement – Brooke Aquilino";

k.  Check No. 1171, dated October 2, 2019, in the amount of $2,000 from Stars and Stripes to Cash with the notation "Loan Repayment Brooke Aquilino";

l.  Check No. 1178, dated October 21, 2019, in the amount of $2,000 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

m.  Check No. 1179, dated October 21, 2019, in the amount of $2,000 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

n.  Check No. 1184, dated December 3, 2019, in the amount of $1,400 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

o.  Check No. 1185, dated December 6, 2019, in the amount of $2,100 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

p.  Check No. 1186, dated December 6, 2019, in the amount of $2,300 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

q.  Check No. 1187, dated December 6, 2019, in the amount of $2,400 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

r.  Check No. 1190, dated December 12, 2019, in the amount of $530 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment";

s. Check No. 1199, dated December 19, 2019, in the amount of $530 from Stars and Stripes to Brooke-Linh with the notation "Loan Repayment".

*See* Exhibit P.

68. Defendant Louie Aquilino, on behalf of Stars and Stripes, wrote checks to Sons of Steel for "loan repayments," even after Sons of Steel stopped operating:

a. Check No. 1005, dated March 3, 2019, in the amount of $20,000;

b. Check No. 1041, dated April 9, 2019, in the amount of $5,463;

c. Check No. 1060, dated May 20, 2019, in the amount of $1,200;

d. Check No. 1084, dated May 28, 2019, in the amount of $571;

e. Check No. 1069, dated May 31, 2019, in the amount of $7,500;

f. Check No. 1088, dated June 5, 2019, in the amount of $510;

g. Check No. 1090, dated June 10, 2019, in the amount of $205;

h. Check No. 1094, dated June 17, 2019, in the amount of $506;

i. Check No. 1097, dated June 26, 2019, in the amount of $600;

j. Check No. 1102, dated July 15, 2019, in the amount of $12,900;

k. Check No. 1127, dated July 24, 2019, in the amount of $1,000;

l. Check No. 1132, dated July 30, 2019, in the amount of $600;

m. Check No. 1137, dated August 14, 2019, in the amount of $3,500.

*See id.*

69. In addition to the loan repayments, additional funds were deposited into the L&B Account, including:

a. A deposit on March 22, 2019, in the amount of $7,422;

b. A deposit on June 26, 2019, in the amount of $5,000;

c.  A deposit on July 15, 2019, in the amount of $40,000;

d.  A deposit on August 21, 2019, in the amount of $13,000;

e.  A deposit on September 3, 2019, in the amount of $2,625.12;

f.  A deposit on October 2, 2019, in the amount of $9,000;

g.  A deposit on October 12, 2019, in the amount of $6,000;

h.  A deposit on January 10, 2020, in the amount of $4,800;

*See* Exhibit O.

70.    After the loan repayments and other deposits to the L&B Account, the money is then transferred to the Defendants' other personal accounts:

a.  After the loan repayment of $20,000 is deposited on May 31, 2019, there is a $20,000 internet transfer to the L&G Account on June 7, 2019;

b.  After the loan repayment of $2,000 is deposited on June 18, 2019, there is a $1,900 internet transfer to the Defendants' Joint Account on June 20, 2019;

c.  After the deposit of $5,000 on June 26, 2019, there is a $4,900 internet transfer to the Defendants' Joint Account on June 27, 2019;

d.  After the deposit of $40,000 on July 15, 2019, there is a $40,000 internet transfer to the Defendants' Joint Account on July 16, 2019;

e.  After the loan repayment of $1,500 is deposited on August 2, 2019, there is a $1,500 internet transfer to the Defendants' Joint Account on August 6, 2019;

f.  After the deposit of $13,000 on August 21, 2019, there is a $13,000 internet transfer to the Defendants' Joint Account on August 22, 2019;

g.  After the loan repayment of $3,000 is deposited on September 5, 2019, there is a $3,000 internet transfer to the Defendants' Joint Account on September 9, 2019;

h.  After the deposit of $9,000 on October 2, 2019, there is a $9,000

internet transfer to the Defendants' Joint Account on October 3, 2019;

i.  After the deposit of $6,000 on October 12, 2019, there is a $6,000 internet transfer to the Defendants' Joint Account on October 16, 2019;

j.  After the two loan repayments totaling $4,000 are deposited on October 21, 2019, there is a $4,000 internet transfer to the Defendants' Joint Account on October 21, 2019;

k.  After the three loan repayments totaling $6,800 are deposited on December 6, 2019, there is a $3,000 internet transfer to the Defendants' Joint Account on December 10, 2019, and a $3,800 internet transfer to the Defendants' Joint Account on December 13, 2019;

l.  After the deposit of $4,800 on January 10, 2020, there is a $3,800 internet transfer to the Defendants' Joint Account on January 13, 2020.

*See id.*

71.  The transactions in the L&G Account when the account was solely in the name of Defendant Louie Aquilino include the following credits and debits:

a.  a $50,000 deposit on March 5, 2019, from a check written by Brooke-Linh to Defendant Louie Aquilino as a "Loan";

b.  a series of eight transfers out of the L&G Account to the Defendants' Joint Account from March 5, 2019 to March 28, 2019, totaling $27,500;

c.  a $15,000 transfer from the Defendant's Joint Account on April 3, 2019;

d.  a series of nine transfers out of the L&G Account to the Defendants' Joint Account from April 4, 2019 to May 7, 2019, totaling $26,100;

e.  a $20,000 deposit on June 7, 2019 from the L&B Account;

f.  a $21,000 transfer on the same day from the L&G account to the Defendants' Joint Account.

14

*See* Exhibits Q and R.

72.     In 2019 and 2020, the Defendant's Joint Account shows the following banking activity:

a.      the January 2019 statement shows a beginning balance of $3,197, with $52,828.34 in credits and $53,950.36 in debits, including over $7,000 in cash deposits, over $20,000 in transfers from investment accounts, and over $25,000 in transfers from the L&G Account;

b.      the February 2019 statement shows $13,817.75 in credits and $13,639.77 in debits, including over $7,000 in cash deposits and over $2,000 of transfers from the L&G Account;

c.      the March 2019 statement shows $40,252.63 in credits and $35,400.36 in debits, including over $25,000 of transfers from the L&G Account and over $11,000 in cash deposits;

d.      the April 2019 statement shows $39,576.73 in credits and $43,097.90 in debits, including $14,000 in cash deposits and $18,500 in deposits from the L&G Account;

e.      the May 2019 statement shows $18,382.82 in credits and $18,282.69 in debits, including $8,500 in cash deposits and over $9,000 in transfers from the L&G Account;

f.      the June 2019 statement shows $30,744.91 in credits and $29,841 in debits, including over $23,000 in transfers from the L&G Account and over $6,000 in transfers from the L&B Account;

g.      the July 2019 statement shows $46,866.37 in credits and $30,701 in debits, including a $4,000 cash deposit and over $40,000 in transfers from the L&B Account;

h.      the August 2019 statement shows $27,112.16 in credits and $31,796.07 in debits, including over $14,000 in transfers from the L&B Account;

i.      the September 2019 statement shows $16,622.11 in credits and $25,669.96 in debits, including over $7,000 in cash deposits and $3,000 in transfers from the L&B Account;

j.      the October 2019 statement shows $21,987.68 in credits and

15

$24,545.70 in debits, including $19,000 in transfers from the L&B Account

k.  the November 2019 statement shows $31,472.86 in credits and $33,753.13 in debits, including over $26,000 of cash deposits;

l.  the December 2019 statement shows $18,363.07 in credits and $19,781.58 in debits, including cash deposits of $8,000 and $6,800 in transfers from the L&B Account;

m.  the January 2020 statement show $13,007.72 in credits and $10,290.93 in debits, including $3,800 from the L&B Account;

n.  the February 2020 statement shows $8,334.79 in credits and $11,116.93 in debits, including cash deposits of over $6,500;

o.  the March 2020 statement shows $7,631.92 in credits and $8,150.08 in debits, including cash deposits totaling $6,600;

p.  the April 2020 statement shows $6,008.02 in credits and $3,507.08 in debits.

*See* Exhibit Q.

73.  In addition to the transfers between accounts stemming from the $210,000, identified above, the Defendants' Joint Account also shows the deposit of cash or cash equivalents:

a.  the January 2019 statement shows over $7,000 in deposits of cash or cash equivalents;

b.  the February 2019 statement shows over $7,000 in deposits of cash or cash equivalents;

c.  the March 2019 statement shows over $11,000 in deposits of cash or cash equivalents;

d.  the April 2019 statement shows over $14,000 in deposits of cash or cash equivalents;

e.  the May 2019 statement shows over $8,500 in deposits of cash or cash equivalents;

f.  the July 2019 statement shows over $4,000 in deposits of cash or cash equivalents;

16

g.   the September 2019 statement shows over $7,000 in deposits of cash or cash equivalents;

h.   the November 2019 statement shows over $26,000 of deposits of cash or cash equivalents;

i.   the December 2019 statement shows over $8,000 of deposits of cash or cash equivalents;

j.   the February 2020 statement shows over $6,500 of deposits of cash or cash equivalents;

k.   the March 2020 statement shows over $6,600 of deposits of cash or cash equivalents;

*See id.*

74.   In addition to transfers between the accounts stemming from the $210,000, identified above, the L&B Account shows the deposit of cash or cash equivalents:

a.   A deposit on March 22, 2019, in the amount of $7,422;

b.   A deposit on June 26, 2019, in the amount of $5,000;

c.   A deposit on July 15, 2019, in the amount of $40,000;

d.   A deposit on August 21, 2019, in the amount of $13,000;

e.   A deposit on September 3, 2019, in the amount of $2,625.12;

f.   A deposit on October 2, 2019, in the amount of $9,000;

g.   A deposit on October 12, 2019, in the amount of $6,000;

h.   A deposit on January 10, 2020, in the amount of $4,800;

*See* Exhibit O.

75.   Records regarding the daughters' financial records reflect the following income:

a.   Giavanna's 2019 Federal Income Tax Return reflects total income of $42,844.00.   *See* Exhibit Y.

17

b. Giavanna's 2020 Federal Income Tax Return reflects total income of $37,390. *See* Exhibit Z.

c. In 2019, Brooke-Linh was claimed on her parents' tax return as a dependent. *See* Exhibit PP.

d. Brooke-Linh's 2020 Federal Income Tax Return reflects total income of $13,232. *See* Exhibit AA.

e. The children's investment/savings account statements that were provided show accounts were liquidated in early 2019, but only generated $35,546. *See* Exhibit BB.

### III. Loan Receivable to Defendant Louie Aquilino

76. The Balance Sheet for Stars and Stripes, as of December 31, 2019, shows a Loan Payable to Brooke-Linh in the amount of $80,140.00. *See* Exhibit EE.

77. Despite the notation that the loan payable was to Brooke-Linh, testimony disclosed that the money loaned to Stars and Stripes was Defendant Louie Aquilino's, not Brooke-Linh's. *See* Exhibit B at 25:2-19 and 26:1-15.

78. At the Case Trustee's 2004 Exam, when asked how much money the Defendant loaned Stars and Stripes, Defendant Louie Aquilino answered "[p]robably between $150,000 to $200,000. I can't remember exactly the amount." *See* Exhibit B at 26:22-5.

79. At the Case Trustee's 2004 Exam, when asked how much money Stars and Stripes paid back, Defendant Louie Aquilino answered "[m]aybe around 80,000." *See* Exhibit B at 27:12-6.

80. At the U.S. Trustee's 2004 Exam, when asked how much money the Defendant loaned Stars and Stripes, Defendant Louie Aquilino answered, "well over $100,000." *See* Exhibit D at 47:20-2.

81. When asked how much of the loan was outstanding as of the Petition Date,

Defendant Louie Aquilino answered "It[] still owes me money, Stars & Stripes." *See* Exhibit D at 47:23-5. When asked if the Defendant knew how much Stars and Stripes owed as of April 2020, the answer was "No." *See* Exhibit D at 48:1-3.

82.  When asked if the Defendants had any records concerning the loan, Defendant Louie Aquilino answered: "No. When the company needed money, I just deposited money. When it needed money to cover payroll, I just deposited - - like, I lent the company money." *See* Exhibit D at 49:4-9.

### IV. U.S. Trustee's Subpoena

83.  On July 21, 2021, the U.S. Trustee issued a *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case* ("Subpoena for Documents") to the Defendants. *See* Exhibit C.

84.  The Subpoena for Documents included the following document requests:

a.  Pay advices or other evidence of income received by the Debtors from any source whatsoever during the six months preceding the petition date to the present.

b.  Federal and state individual tax returns for the Debtors for years 2018, 2019, and 2020, including all supporting schedules, W-2, 1099, and K-1 forms.

c.  Federal and state tax returns for Debtors' businesses for years 2018, 2019, and 2020 including all supporting schedules.

d.  Financial statements, books, and records for all businesses owned or controlled by the Debtors including, but not limited to, income statements, balance sheets, profit and loss statements, accounts receivable ledgers, accounts payable ledgers, and capital account ledgers for the period of January 2018 to the present. The foregoing request includes, but is not limited to, the following businesses:

     i.  Stars and Stripes, LLC;
     ii.  Stars and Stripes Enterprises;
     iii.  Sons of Steel, LLC; and
     iv.  Salon Giavanna Marie

e. All business formation documents including, but not limited to, Certificates of Incorporation, Partnership Agreements, Limited Liability Company formation documents, in connection with any and all businesses in which the debtors have/had an interest within the last six years preceding the petition date.

f. All monthly bank statements, canceled checks, check registers, withdrawal/deposit slips, or other evidence of the transfer of funds into or out of any checking, savings, money market, certificate of deposit or other account of **any kind or nature** including, but not limited to, any online internet bank accounts, online money transfer service accounts, electronic cash accounts, and/or mobile payment accounts in which the Debtors have or had an **interest or signatory authority** from January 2018 to the present.   The foregoing request includes, but is not limited to, the Debtors' Columbia Bank accounts ending in #1152, #0125 and #5906.

g. All monthly account statements for the Debtors' interest in the following financial accounts from January 2018 to the present:

   i. Tag Resource/Transamerica;
   ii. MFS Investment Management;
   iii. Acorn;
   iv. Janney; and
   v. TD Bank

h. Any and all documents relating to proceeds from a lawsuit deposited into any of the Debtors' bank accounts including, but not limited to, the Debtors' Columbia Bank account(s).

i. All documents that refer to, relate to, reflect or concern any transfers made to or from any financial account held for the benefit of the Debtors, by any third party, for the last five years.

*See* Exhibit C.

85.    In response to the Subpoena for Documents, the Defendants provided documents, including bank account statements for personal and business accounts, individual and business tax returns, balance sheets and profit and loss statements for the business for certain years, real estate documents, investment statements, unemployment statements, and others.

## FAILURE TO ACCOUNT

86.     The Defendants did not provide the requested supporting schedules for the Defendants' individual and business returns, in particular:

a.  W-2s, 1099s, and K-1 forms for the Salon Giavanna business for the years 2018 and 2019.

   The 2018 Schedule C for the Salon Giavanna business included a Wages expense of $516,829 (67% of gross sales). The 2019 Schedule C for the Salon Giavanna business includes a Wages expense of $684,275 (66% of gross sales). *See* Exhibit PP. In the absence of the supporting W-2s, 1099s, and K-1 forms, the reviewer is unable to confirm that all payments were actual wages paid and the recipient(s) of the wages.

b.  W-2s and 1099s for the Stars and Stripes business for the years 2018 and 2019.

   The 2018 Form 1120S for the Stars and Stripes business includes Compensation of Officers of $34,500 and Salaries and Wages of $45,084 (48% of gross sales). The 2019 Form 1120s for the Stars and Stripes business includes Compensation of Officers of $16,848 and Salaries and Wages of $160,834 (39% of gross sales). *See* Exhibit QQ. In the absence of the supporting W-2s and 1099s, the reviewer is unable to confirm that all payments were actual wages paid and the recipient(s) of the wages.

87.     The Defendants did not provide documents or records to substantiate their testimony that the transfers and deposits into their accounts were gifts from their daughters, in particular, the Defendants did not provide proof of income or assets of their daughters, Brooke-Linh and Giavanna, sufficient to explain the source of the deposits totaling approximately

$113,000 into the Defendants' Joint Account in 2019 and from January 1, 2020 to the Petition Date as well as the deposits into the other accounts in which they had an interest.

88.     The Defendants did not provide any other documentation or records to account for the source of the deposits totaling approximately $113,000 in the Defendants' Joint Account at a time when they claim they had $16,847.85 total income in 2019, no income from January 1, 2020 to the Petition Date.

89.     The Defendants did not provide documents or records to explain the source of the deposits into the L&B Account.

90.     The Defendants did not provide documents or records to account for how the $210,000 was ultimately used, other than the transfers between the Defendants' Joint Account, the L&B Account, the L&G Account, and the business accounts.

I certify that the foregoing statements made by me are true. I understand that if any of the foregoing statements are willfully false I may be subject to punishment.


By:   _/s/ Adam Shaarawy_____
      Adam Shaarawy
      Bankruptcy Analyst

DATED: July 31, 2024